UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JAY ROBERT MAUST II** | **CASE NO. 2:22-CV-00644** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **U S A A CASUALTY INSURANCE CO** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM RULING

Before the Court is "USAA CIC's Motion for Partial Summary Judgment as to Diminution in Value and Actual Cash Value" (Doc. 14).

## FACTUAL STATEMENT

On August 27, 2020, Hurricane Laura made landfall near Lake Charles, Louisiana and on October 9, 2020, Hurricane Delta made landfall near Lake Charles, Louisiana. During the relevant time period, Defendant USAA Casualty Insurance Company ("USAA") insured Plaintiff's property. Plaintiff submitted claims to USAA for damage caused by both Hurricanes.

USAA sent its adjuster to inspect the damages to the property on September 3, 2020.[1] Plaintiff sent USAA a formal proof of loss of the damage caused by Hurricanes Laura and Delta.

Not satisfied with USAA's adjustment of his claim, on March 8, 2022, Plaintiff filed this lawsuit seeking damages for breach of contract and statutory bad faith damages. In May 2022, Plaintiff sold the property for $1,412,000 and expressly reserved ownership of

---

[1] Plaintiff's exhibit F.

his hurricane damage settlement with USAA.[2] The Addendum to the Buy Sale Agreement notes that the price is "Reduced by 38,000 in lieu of repairs. Sales Price to read one million four hundred twelve thousand (1,412,000)."[3]

After the sale of the property, Plaintiff provided a report authored by Leonard E. Pauley, Jr. which opined that Plaintiff has suffered a lost of $288,000.00 in market value in the property due to the damage and incomplete repairs.[4]

In his discovery, Plaintiff identified a litany of damages that were not repaired prior to the sale, including the roof, siding, fencing, garage, HVAC, sunroom, hallway, office, and multiple bathrooms and bedrooms.[5] Plaintiff obtained a repair estimate for these damages in the amount of $368,217.95.[6] On December 26, 2023, Plaintiff provided USAA a repair estimate seeking $202,439.80 for "replacement cost."[7]

The USAA policy provides the following:

**LOUISIANA SPECIAL PROVISIONS, FORM HO-LA DEFINITIONS**

Item 1. "Actual cash value" is deleted and replaced by the following:
1. ***"Actual cash value" is calculated as the amount it would cost to repair or replace covered property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for obsolescence and a "deduction for depreciation".*** The "deductions for depreciation" will be determined as follows:

---

[2] Defendant's exhibit B.
[3] *Id* p. 2.
[4] Defendant's exhibit F, p. 3.
[5] Defendant's exhibit C.
[6] Defendant's exhibit D.
[7] Defendant's exhibit E.

For property covered under Coverage A – Dwelling Protection or Coverage B – Other Structures Protection, the deduction will be based on the age and condition of the materials making up the damaged property and will apply to materials, labor, sales tax, and overhead and profit that are included in the cost to repair or replace the damaged property.

For property covered under Coverage C – Personal Property Protection, the deduction will be based on the age and condition of the damaged item and will apply to the cost of the item and any sales tax that is included in the cost to repair or replace the damaged item.

"Actual cash value" applies to valuation of covered property regardless of whether that property has sustained a partial or total loss. The "actual cash value" of lost or damaged property may be significantly less than its replacement cost.

****

## SECTION I – LOSS SETTLEMENT

Item 2. is deleted in its entirety and replaced by the following:
2. All items under Property We Cover – Dwelling Protection and buildings on the "residence premises" under Other Structures Protection. We will pay our cost to repair or our cost to replace the damaged property with similar construction and for the same use on the premises shown in the Declarations, subject to the following:

   a. When our cost to repair or replace the damaged property is equal to or less than $5,000 we will pay you the full replacement cost amount without deduction for depreciations.
   b. When our costs to repair or our cost to replace the damaged property is greater than $5,000, and until actual repair or replacement is completed, we will pay only the "actual cash value", not to exceed our cost to repair or our cost to replace the damaged part of the property.

      (1) To receive any additional payments on a replacement cost basis, you must notify us within 30 days after the work has been completed.

         a. You must complete the actual repair or replacement of the damaged part of the property within one year after the date we tender payment of "actual cash

    value", unless during this period you request in writing that this time limit be extended for an additional 180 days; or

   b. For a loss which results from an event assigned a Property Claims Service (PCS) catastrophe codes, you must complete the actual repair or replacement of the damaged part of the property within 18 months after the date we tender payment of "actual cash value", unless during this period you request in writing that this time limit be extended for an additional 180 days.

  (2) When repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or our cost to repair or replace the damaged part of the property whichever is less.

The policy also includes the following provision:

### SECTION I – LOSSES WE DO NOT COVER

****

LOSSES WE DO NOT COVER UNDER DWELLING PROTECTION, OTHER STRUCTURES PROTECTION AND PERSONAL PROPERTY PROTECTION:
1. We do not insure for damage consisting of or caused directly or indirectly by any of the following regardless of:
 (i) The cause of the excluded event or damage that:
  Or
 (ii) Other causes of the loss that; or
 (iii) Whether the event or damage occurs, suddenly or gradually, involves isolated or widespread damage, or occurs as a result of any combination of these to; or
 (iv) Whether other causes or events act concurrently or in any sequence with the excluded event to produce the loss.

****
k. Diminution in value, meaning any reduction in value that would remain after damaged property is repaired or replaced.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material

fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

USAA moves for entry of a partial summary judgment as a matter of law as follows: Plaintiff is (1) barred from recovering any damages based on an alleged diminution in value of the insured property, and (2) limited to "actual cash value" as the measure of recovery, if any, for unrepaired damages.

Plaintiff claims that he is entitled to damages for the loss of market value on his property due to the failure of USAA to pay for the repairs. On December 22, 2020, USAA tendered $21,604.00 to the mitigation company and on April 12, 2021, USAA tendered $5,631.89 for repairs to the dwelling of the home.[8] Plaintiff asserts that he has submitted an estimate for $368,217.95 as well as a comprehensive Proof of Loss for $373,442.65 on January 6, 2022,[9] to which USAA failed to respond. Plaintiff sold the home in 2023 but complains that he was unable to make any significant repairs due to USAA failing to properly adjust his claim.

USAA argues that the subject policy expressly excludes any loss caused by a diminution in value and instead provides that actual cash value is the appropriate measure of recovery for unrepaired covered damages. Thus, USAA maintains that Plaintiff's claim

---

[8] Plaintiff's exhibit A.
[9] Plaintiff's exhibits B and C.

for diminution in value must fail, and that the policy only provides coverage that is limited to actual cash value.

As the undersigned held in *Touchet v. UPC*, another Hurricane Laura case, the plain language of the policy in this matter provides that repair or replacement cost is not due until that work is complete. 2022 WL 710621 (W.D. La. Mar. 9, 2022). Furthermore, the jury will determine whether Plaintiff is entitled to recover replacements costs. *Accord Mason v. Shelter Mutual Ins. Co.*, 209 So.3d 860, 867 (La. Ct. App. 3 Cir. 2016).

As noted by Plaintiff, the policy lends itself to a situation where the insurer properly adjusts the claim allowing the insured the time and funds to properly complete repairs. However, Plaintiff alleges that USAA was in bad faith for failing to properly adjust his claims and arbitrarily and capriciously failing to timely make payment for those claims. Thus, the policy does not speak to the situation here, where allegedly the insurer failed to adjust the claim and the insured sold the property before the repairs or replacement of the property was made due to a lack of funds. As such, the Court will allow the claim to be decided by the trier of fact.

## **CONCLUSION**

For the reasons explained herein, the Motion for Partial Summary Judgment will be denied.

**THUS DONE AND SIGNED** in Chambers on this 24th day of January, 2024.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**